IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| Union Pacific Railroad Company, ) | |
| ) | |
| Plaintiff, ) | Case No. |
| ) | |
| v. ) | J. |
| ) | |
| International Association of Sheet Metal, ) | |
| Air, Rail, and Transportation Workers ) | |
| (SMART) - Transportation Division, ) | |
| ) | |
| Defendant ) | |

## PETITION TO VACATE ARBITRATION AWARD

Plaintiff, Union Pacific Railroad Company ("UP"), by and through its undersigned counsel, brings this action to vacate an arbitration award reinstating a railroad engineer who was terminated for admittedly defecating on a knuckle connecting a locomotive and boxcar, throwing feces-covered tissue out the window of the locomotive, informing his manager that he left a present, and then leaving his feces for others to clean up. In support of this Complaint and Petition, UP alleges as follows:

### PARTIES

1. UP is a railroad carrier with a principal place of business located at 1400 Douglas Street, Omaha, Nebraska 68179. UP operates in 23 states, including Nebraska, across the western two-thirds of the United States.

2. International Association of Sheet Metal Air, Rail, and Transportation Workers - Transportation Division (the "Union") is a labor organization whose headquarters is located at 24950 Country Club Blvd., Suite 340, North Olmsted, Ohio 44070. The Union has approximately 125,000 active and retired members of the former United Transportation Union,

who work in a variety of different crafts. The Union is the largest railroad operating union in North America, with more than 500 locals throughout the United States.

3. The Union is the certified representative of several thousand of UP's employees in various crafts and positions throughout UP's area of operations.

4. Labor relations between UP and the Union are subject to the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA").

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the RLA, 45 U.S.C. § 153 First (q). This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1337, as the RLA is an Act of Congress regulating commerce.

6. Venue is appropriate in this Court pursuant to the RLA, 45 U.S.C. § 153 First (q), and 45 U.S.C. § 153 First (p) because UP is located in and has its principal operating office in this District. The Union also conducts substantial union business in this District, including with its members and UP.

## FACTUAL BACKGROUND

7. The Union represented UP engineer Matthew Lebsack in connection with his January 5, 2017, investigatory hearing and subsequent grievance handling.

8. Mr. Lebsack was subject to UP's Policy for Managing Agreement Professionals for Success (MAPS). A true and correct copy of MAPS is appended hereto as Exhibit A.

9. On November 20, 2016, Mr. Lebsack's train made a stop. While the train was stopped, Mr. Lebsack walked past the bathroom in the locomotive cab, exited the locomotive, and defecated on the knuckle connecting the locomotive to the boxcar.

10. Mr. Lebsack returned to the locomotive cab, walked past the bathroom again, and wiped himself while standing in the cab. Mr. Lebsack threw soiled tissues out the locomotive cab window. He also twice raised his middle finger to the security camera in the locomotive cab.

11. The conductor of the train did not witness Mr. Lebsack's actions set forth above, but subsequently noticed feces on the knuckle while he was performing his job functions.

12. After returning to the rail yard, Mr. Lebsack joked with his manager that he left a "present" for his co-workers and then left the premises.

13. Two other UP employees cleaned up Mr. Lebsack's feces from the knuckle using rubber gloves, napkins, and bottled water.

14. On January 5, 2017, the parties held an investigatory hearing as provided for in the applicable collective bargaining agreement between UP and the Brotherhood of Locomotive Engineers and Trainmen ("BLET"). Although the Union represented Mr. Lebsack at the hearing, the BLET agreement applied because Mr. Lebsack was working as a locomotive engineer on November 20, 2016. Mr. Lebsack testified at the hearing that he walked past the locomotive bathroom, defecated on the knuckle, wiped himself in the cab instead of in the bathroom, threw soiled tissues out the locomotive window, told his manager that he left a "present", and left others to clean up after him. Mr. Lebsack also admitted at the hearing that he engaged in completely unacceptable behavior and made a decision that was disgusting, poor and rude. Mr. Lebsack conceded that he was not looking to make excuses for what he did and that he was willing to accept full and complete responsibility for his actions.

15. Following the investigatory hearing, UP dismissed Mr. Lebsack from employment by letter dated January 11, 2017. A true and correct copy of the dismissal letter is appended as Exhibit B.

16. UP found that Mr. Lebsack violated Rule 1.6, which provides, "Conduct, Employees must not be: Careless of the safety of themselves or others, Negligent, Insubordinate, Dishonest, Immoral, Quarrelsome or Discourteous.  Any act of hostility, misconduct, or willful disregard or negligence affecting the interest of the company or its employees is cause for dismissal and must be reported. []"  *See* Exhibit A, p. 4, n.1.

17. Violating Rule 1.6 is a "dismissal event" per MAPS.  *See* Exhibit A, p. 21.

18. As provided for in the applicable collective bargaining agreement, on March 2, 2017, the Union appealed Mr. Lebsack's dismissal, and UP denied this appeal on May 1, 2017.

19. Consistent with the RLA, the parties submitted the dispute to an arbitral panel known as Public Law Board 7861 ("PLB 7861"), which designated the matter as Case No. 5.  A true and correct copy of the parties' correspondence and written agreement establishing the Public Law Board to arbitrate various cases, including Mr. Lebsack's case, is appended hereto as Exhibit C.

20. Section 5(b) of the parties' agreement establishing PLB 7861 reads as follows: "The Board . . . shall not have authority to change existing agreements or make new rules governing . . . rules and/or working conditions."  *See* Exh. C, p. 2 of the Agreement.

21. Arbitrator Cary Morgen served as the Chairperson and Neutral Member for Mr. Lebsack's case.

22. On November 16, 2018, PLB 7861 issued an Interim Award, a true and correct copy of which is appended as Exhibit D.  On December 3, 2018, PLB 7861 issued the Final Award, a true and correct copy of which is appended as Exhibit E.  On December 12, 2018, PLB 7861 issued an Amended Award, a true and correct copy of which is appended as Exhibit F.

23. In the Amended Award, Arbitrator Morgen found, "In light of Claimant's clear and unequivocal admission of guilt, there is no question that the Carrier had substantial evidence to support its charge." *See* Exhibit F, p. 2.

24. Arbitrator Morgen opined that UP should have sent Mr. Lebsack for a fitness for duty evaluation and imposed discipline only if Mr. Lebsack was "found fit." *See* Exhibit F, p. 2.

25. Arbitrator Morgen found that UP's decision to terminate Mr. Lebsack's employment was excessive discipline and ordered UP to reinstate Mr. Lebsack without back pay if he were found fit for duty.

26. On or about December 26, 2018, UP notified the Union of its refusal to reinstate Mr. Lebsack.

## COUNT 1

### THE ARBITRATOR'S AWARD SHOULD BE VACATED IN PART BECAUSE THE ARBITRATOR EXCEEDED THE SCOPE OF HIS JURISIDICTION UNDER THE RLA

27. UP incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

28. The Arbitrator exceeded the scope of his jurisdiction under the RLA, 45 U.S.C. § 153 First (q) by failing to uphold Mr. Lebsack's discharge from employment after finding that UP "had substantial evidence to sustain the charges."

29. The Arbitrator exceeded the scope of his jurisdiction under the RLA, 45 U.S.C. § 153 First (q) by concluding that "it would have been reasonable for the Carrier to have first sent Claimant for comprehensive psych and medical evaluations" before disciplining him. There is no rule requiring UP to send employees for psychological or medical evaluations prior to imposing discipline for violating Rule 1.6. By grafting this new rule on UP and relying upon it

in finding that UP's termination of Mr. Lebsack was excessive, the Arbitrator exceeded his jurisdiction as set forth under Section 5(b) of the parties' agreement establishing PLB 7861, which reads as follows: "The Board . . . shall not have authority to change existing agreements or make new rules governing . . . rules and/or working conditions." *See* Exh. C, p. 2 of the Agreement.

30. The Arbitrator engaged in his own brand of industrial justice, exceeding his jurisdiction under the RLA, 45 U.S.C. § 153 First (q).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Union Pacific Railroad prays that this Court grant judgment in its favor and against the Union by:

A. Setting aside the portion of the Award finding that UP must reinstate Mr. Lebsack;

B. Awarding costs to UP and any other relief the Court deems just and proper.

        Respectfully submitted,

        By    *s/Ryan D. Wilkins*
            Ryan D. Wilkins
            NE ID 24622
            RyanWilkins@UP.com
            Union Pacific Railroad
            1400 Douglas St., Mail Stop 1580
            Omaha, NE 68179
            (402) 544-3904

            Alan M. Pittler (*pro hac vice* motion pending)
            PA ID 77276
            apittler@cozen.com
            COZEN O'CONNOR
            One Oxford Centre
            301 Grant Street, 41st Floor
            Pittsburgh, PA 15219
            (412) 620-6500

            Joseph P. Sirbak, II (*pro hac vice* motion pending)
            PA ID 94273
            jsirbak@cozen.com
            COZEN O'CONNOR
            One Liberty Place, 1650 Market Street, Suite 2800
            Philadelphia, PA 19103
            (215) 665-4634

Dated: January 23, 2019