EXHIBIT F

PUBLIC LAW BOARD 7861

CASE NO. 5
AMENDED FINAL AWARD

Carrier File No. 1682795
Organization File No. D3534

**Parties to Dispute:**   (SMART Transportation Division)
(and
(Union Pacific Railroad Company)

**Statement of Claim**

Claim of Spokane Engineer M L Lebsack for reinstatement to service with all rights unimpaired, pay for all time and benefits lost, and removal of all notations of this discipline from his personal record.

**Findings**

The Carrier or carriers and the employee or employees involved in this dispute are respectively carrier or employee within the meaning of the Railway Labor Act, as approved June 21, 1934. Public Law Board 7861 has jurisdiction over the parties and the dispute involved herein. Parties to said dispute were given due notice of hearing thereon.

On November 16, 2018, this Board issued an Interim Award which stated that Claimant, Spokane Engineer M.L. Lebsack, shall be reinstated to his former position on a last chance basis, without any back pay or benefits, on the condition precedent that he successfully completes a fitness-for-duty examination that shall include both a physical and a psychological evaluation. If Claimant is found medically and psychologically fit to return to duty, any future misconduct such as what occurred on November 20, 2016, will result in Claimant's dismissal from service. This Final Award sets forth the basis for the Board's decision.

At the time of the incident Claimant was an Engineer with 18 years' service. By letter dated November 28, 2016, Claimant was directed to report for a formal investigation on December 7, 2016, in connection with the following charge:

> On 11/20/2016, at the location of Fish Lake, WA, near Milepost 354.8, Ayer Subdivision, at approximately 10:30 hours, while employed as an ENGINEER,

Public Law Board No. 7861
Case No.5
Page 2

you allegedly used the locomotive UP5095 as a restroom leaving feces on the knuckle of the boxcar FBOX 502082 and locomotive UP5095. This is a possible violation of the following rule(s) and/or policy:
1.6: Conduct – Immoral, Careless of the safety of themselves or others, Negligent, Dishonest, Discourteous.

By letter dated January 11, 2017, Claimant was informed that the charge against him was sustained and that he was dismissed from all service with the Railroad.

At the on-property investigation, Claimant accepted full and complete responsibility for his actions on November 20, 2016. The record is replete with his apologies to the Carrier in general and Manager Towles in particular, to his fellow employees, and to the Organization for the discomfort he may have caused. Further, it was a lengthy, arduous investigation in which the Hearing Officer had to stop the proceeding on at least three occasions to allow Claimant to regain his composure. The Board finds it unnecessary for the purpose of this Final Award to dredge up the graphic, squalid details of the November 20 incident. It will suffice instead to borrow Claimant's own words: "I made a decision that was...disgusting, poor [and] rude." In light of Claimant's clear and unequivocal admission of guilt, there can be no question that the Carrier had substantial evidence to support its decision to sustain the charge. It is, nevertheless, well established that even if the Board finds substantial evidence, the Board may modify the penalty if we determine that the discipline was arbitrary, excessive, unreasonable, or an abuse of the Carrier's discretion. This Board must take into account significant mitigating circumstances in the record which in our view made the decision to dismiss Claimant in this situation excessive.

Claimant was hired by the Carrier in 1998. At the time of his dismissal he had been working the XE21 Engineer's Extra Board. As early as 2007, Claimant was on record with the Carrier as suffering from psychological disorders, including panic disorder and anxiety, as well as various physical digestive system problems and sleep apnea, for which he was being treated by a psychotherapist. At that time, Claimant had applied for and had been approved to receive FMLA protection. Claimant has been under the care of the same primary care physician since at least 2007.

Public Law Board No. 7861
Case No.5
Page 3

At the investigation, Claimant testified that a couple of days prior to the dispatcher's call to report for his outbound trip on November 18, his wife moved out of their home, took their daughter with her, and asked him for a divorce. Claimant said that the outbound trip to Hinkle was for a high-hazard oil train. After tying up at about 7:55 a.m. on November 19, it did not appear that he would be called for a return trip until sometime between 5 a.m. and 8 a.m. on November 20. Claimant said he did not get to bed until 10 p.m. on November 19. About two and one-half hours later he received a call that a train was being built and to report for work. Claimant said that on the return trip to Spokane he was very fatigued, having panic attacks, and dealing with his family stress. Claimant admitted that at the time of the November 20 incident he was also dealing with depression and obsessive-compulsive disorder.

Claimant admitted that he has been under a doctor's care for medical and psychological issues for a long time. Nevertheless, because immediately after the November 20 incident he began to have suicidal thoughts due to his family situation, he also contacted the Carrier's EAP director for the Western Region. Claimant stated further that he was on anti-depressant medication and was seeing a psychiatrist as well as working with the EAP director. He said it was the first time he has been prescribed psychotropic medication. As a result of the positive steps he was taking to turn his life around, Claimant said that his wife had moved back into their home, and they were planning to attend marriage counseling.

The essence of the parties' respective positions can be stated succinctly. The Carrier contends that Claimant admitted to his misconduct, and that the facts surrounding the incident are of such an egregious and immoral nature that his dismissal must be upheld and the Claim denied in full. Conversely, the Organization does not dispute what Claimant did, argues that he accepted full responsibility for his action, and that he should be treated like many other employees who are taken out of service for medical reasons.

Given that Claimant was a long-term employee with a known history of psychological issues, before any disciplinary action was contemplated, it would have been reasonable for the Carrier to have first sent Claimant for comprehensive psych and medical evaluations to determine

Public Law Board No. 7861
Case No.5
Page 4

his fitness for duty and the credibility of his explanations. If found fit, it would then have been appropriate to handle the incident strictly as a disciplinary matter.

While we find that the Carrier had substantial evidence to sustain the charges, this Board further finds that in light of Claimant's 18 years' service with limited discipline, and given the aforementioned mitigating factors, dismissal was excessive. The Board stands by the explicit terms and conditions contained in its Interim Award, cited *supra*, and, in the event Claimant is found fit to return to duty, we underscore to Claimant that such conduct in the future cannot be tolerated nor excused.

## AWARD

Claim sustained in accordance with the findings.

/s/ Cary Morgen
Cary Morgen
Chairperson and Neutral Member

Amy J. Bang
Carrier Member

Rob Warth
Organization Member

Dated at Chicago, Illinois, this 12th day of December, 2018.