IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL, AND TRANSPORTATION WORKERS (SMART) - TRANSPORTATION DIVISION,<br><br>Defendant. | **8:19-CV-31**<br><br>**MEMORANDUM AND ORDER** |
| INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS - TRANSPORTATION DIVISION,<br><br>Petitioner,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>Respondent. | **8:19-CV-50**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on judicial review of the administrative decision of an arbitration board pursuant to the Railway Labor Act (RLA), 45 U.S.C. § 151 et seq. Filing 19; Filing 20.[1] Union Pacific Railroad Company ("Union Pacific") seeks to vacate the award issued by the arbitration board while International Association of Sheet Metal, Air, Rail, and Transportation Workers - Transportation Division ("SMART") seeks to enforce the award. For the reasons set forth herein, the Court will grant SMART's Motion for Summary Judgment, Filing 19,

---

[1] The parties previously stipulated to and the Court granted consolidation of the cases at 8:19-CV-50 and 8:19-CV-31. Filing 10. 8:19-CV-31 was designated the lead case while 8:19-CV-50 was designated the member case. Unless otherwise noted, all citations to the record are to the lead case at 8:19-CV-31.

1

will deny the Motion for Summary Judgment filed Union Pacific Railroad Company, Filing 20, and will uphold the arbitration award.

## I. BACKGROUND

The parties do not dispute the material facts underlying this case.

Matthew Lebsack has worked for Union Pacific for eighteen years, most recently in the position of engineer. Filing 18-6 at 274-75. On November 20, 2016, while at work, Lebsack defecated on a train-car knuckle,[2] threw feces-covered toilet paper out the locomotive window, and informed his manager he had left a "present" for him. Filing 18-2 at 64-65, 238. Lebsack did this even though the train restroom was only a few feet away. Filing 18-2 at 239-40. Lebsack's coworkers cleaned the feces from the knuckle using bottled water and paper towels. Filing 18-2 at 66.

As a result of this incident, Union Pacific issued a letter informing Lebsack it was charging him with a violation of company rules and requiring him to appear for an investigation. Filing 18-2 at 58. Specifically, Union Pacific alleged Lebsack had violated Rule 1.6 of its Policy for Managing Agreement Professionals for Success (MAPS). Filing 18-2 at 58. Rule 1.6 states:

> Conduct, Employees must not be: Careless of the safety of themselves or others, Negligent, Insubordinate, Dishonest, Immoral, Quarrelsome or Discourteous. Any act of hostility, misconduct, or willful disregard or negligence affecting the interest of the company or its employees is cause for dismissal and must be reported. Indifference to duty or to the performance of duty will not be tolerated.

Filing 18-3 at 50; Filing 18-3 at 10. MAPS also provides that "[e]mployees may be removed from service and subject to potential dismissal from employment for a single violation of **Rule 1.6, Conduct**, or other serious policy or rule violations." Filing 18-3 at 50 (footnote omitted).

---

[2] The "knuckle" appears to refer to the point at which two separate train cars are connected. Filing 21 at 5; Filing 19 at 4.

Lebsack contacted SMART for union representation at the investigation hearing. Filing 18-2 at 50, 52-53. At the hearing, Lebsack admitted to the incident and apologized for his behavior. Filing 18-2 at 234, 285. Lebsack also introduced evidence of mitigating circumstances, namely that he was suffering from physical and mental health complications at the time of the incident including irritable bowel syndrome and that his wife had just left him. Filing 18-2 at 234, 254, 265, 285.

Following the hearing, Union Pacific terminated Lebsack for having violated MAPS Rule 1.6. Filing 18-2 at 23. SMART timely appealed Lebsack's termination and the matter was referred to a public law board for arbitration pursuant to the RLA. *See* 45 U.S.C. § 153; Filing 18-2 at 1-11. The Board heard arguments from both SMART and Union Pacific and then issued an Interim Award reinstating Lebsack to his position as engineer. Filing 18-6 at 269. It stated:

> Lebsack[] shall be returned to service on a last chance basis, without any back pay or benefits, on the condition precedent that he successfully completes a fitness-for-duty examination that shall include both a physical and a psychological evaluation. If [Lebsack] is found medically and psychologically fit to return to duty, any future misconduct such as what occurred on November 20, 2016, will result in [his] dismissal from service.

Filing 18-6 at 269.

Shortly thereafter, the Board issued its Amended Final Award which upheld the determination of the Interim Award and set forth the rationale for the decision. Filing 18-6 at 274-77. The Board reasoned that termination was unduly harsh given Lebsack's medical issues and history of mental illness, exacerbated by his recent marital issues. Filing 18-6 at 276-77. It stated, "While we find that [Union Pacific] had substantial evidence to sustain the charges, this Board further finds that in light of [Lebsack]'s 18 years' service with limited discipline, and given the aforementioned mitigating factors, dismissal was excessive." Filing 18-6 at 277. It concluded by emphasizing that "such conduct in the future cannot be tolerated nor excused." Filing 18-6 at 277.

3

On January 23, 2019, Union Pacific filed a Petition to Vacate the arbitration award in the lead case in this Court and SMART filed a Petition to Enforce the Board's decision in the member case. Filing 1; Filing 1 in case 8:19-CV-50. Following consolidation of the cases, the parties filed a copy of the administrative record with the Court, Filing 18, and their respective motions for summary judgment and briefs.

## II. ANALYSIS

### A. Standard of Review

Although the motions before the Court are styled as cross-motions for summary judgment, this is an action for judicial review of the administrative decision of an arbitration board. Under the Railway Labor Act, an aggrieved employee can first seek review of an employer's decision by appealing to an arbitration board, in this case, Public Law Board 7861. 45 U.S.C. § 153(i); Filing 18-2 at 2-11. A party unhappy with the Board's decision can subsequently seek review in the district courts. 45 U.S.C. §§ 153(p) & (q). If a party seeks such judicial review, the Court can set aside the Board's decision only for (1) its failure to comply with RLA requirements, (2) its failure to confine itself to matters within its jurisdiction, or (3) fraud or corruption by a Board member. *United Transp. Union*, 3 F.3d at 258 (citing 45 U.S.C. § 153(q)).

"Judicial review of a labor-arbitration decision . . . is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Sullivan v. Endeavor Air, Inc.*, 856 F.3d 533, 537 (8th Cir. 2017) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S. Ct. 1724, 149 L. Ed. 2d 740 (2001)). "[S]tatutory review of arbitration awards under the Railway Labor Act is 'among the narrowest known to the law.'" *Union Pac. R.R. Co. v. United Transp.*

*Union*, 3 F.3d 255, 258 (8th Cir. 1993) (quoting *Int'l Ass'n of Machinists v. N.W. Airlines*, 858 F.2d 427, 429 (8th Cir. 1988)).

### B. Board's Award

As set forth above, the Court can set aside the Board's decision only for (1) its failure to comply with RLA requirements, (2) its failure to confine itself to matters within its jurisdiction, or (3) fraud or corruption by a Board member. *United Transp. Union*, 3 F.3d at 258 (citing 45 U.S.C. § 153(q)). Union Pacific claims the Board's decision should be set aside under the second provision because the Board failed to confine itself to matters within its jurisdiction.

An arbitration board exceeds its jurisdiction if "the award is 'without foundation in reason or fact.'" *Sullivan*, 856 F.3d at 539 (quoting *Int'l Ass'n of Machinists*, 858 F.2d at 430). "To merit judicial enforcement, an award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement." *Id.* (quoting *Bhd. of Ry., Airline & S.S. Clerks v. Kan. City Terminal Ry. Co.*, 587 F.2d 903, 906 (8th Cir. 1978)). "[T]he question . . . is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." *McClendon v. Union Pac. R.R. Co.*, 640 F.3d 800, 804 (8th Cir. 2011) (quoting *Hill v. Norfolk & W. Ry.*, 814 F.2d 1192, 1194-95 (7th Cir. 1987)).

Union Pacific claims the Board's award exceeded the Board's jurisdiction by crafting a new remedy despite finding just cause for Lebsack's dismissal and by creating new prerequisites to discipline not found in the collective bargaining agreement (CBA). Filing 21 at 18, 22. An examination of the CBA provisions provided to this Court reveals both claims to be without merit.

5

The parties agree that the CBA provision which governs the present dispute is "Rule 82. Discipline – Procedure" for engineers, Filing 18-5 at 41.[3] Rule 82 states that it is a "SYSTEM AGREEMENT" regarding discipline and is to replace all existing agreements relating to the handling of discipline. Filing 18-5 at 41. It states, "Locomotive engineers will not be disciplined without first being given a fair and impartial investigation . . . ." Filing 18-5 at 41. It goes on to provide a timeline for when Union Pacific must provide notice to an employee facing discipline and how an investigation and a hearing are to be conducted. Filing 18-5 at 41-42. With respect to review by the Board, Rule 82 is brief, stating only, "If the engineer is not satisfied with the decision [of the internal investigation], the [union] General Chairman may appeal to the designated Labor Relations officer within 60 days . . . ." Filing 18-5 at 43. Thereafter, "[i]f the engineer is dissatisfied with the decision of Labor Relations, proceedings for final disposition of the case under the Railway Labor Act must be instituted by the engineer . . . within one year." Filing 18-5 at 43.

Union Pacific points to cases in which arbitrators were found to have exceeded their authority by crafting new remedies once just cause for dismissal was found. Filing 21 at 17-25. These cases are inapposite to the one at hand. The guiding light in judicial review of arbitration decisions pursuant to the Railway Labor Act is the governing CBA. *See Sullivan*, 856 F.3d at 539. In the cases cited by Union Pacific, the respective CBAs removed the arbitrator's authority to craft an alternate remedy if the termination was supported by just cause. For example, the Eighth Circuit found an arbitrator had no authority to fashion a different remedy other than termination once it concluded the employer had just cause for its decision in *N. States Power Co., Minn. v. Int'l Bhd.*

---

[3] Rule 82 appears to be part of a larger CBA between Union Pacific and the engineer's union, but the full CBA does not appear in the record. However, the parties are in agreement that the disciplinary provisions found at Rule 82 govern the present dispute. *See* Filing 21 at 3 (stating "the applicable CBA includes a system-wide discipline rule" and citing Rule 82); Filing 23 at 3 (agreeing the governing CBA is that cited by Union Pacific, Rule 82). Additionally, although Lebsack is a member of SMART, the controlling CBA is between Union Pacific and the Brotherhood of Locomotive Engineers and Trainmen due to Lebsack's position as an engineer. Filing 23 at 3.

*of Elec. Workers, Local 160*, 711 F.3d 900, 902 (8th Cir. 2013). The court relied on the language of the governing CBA which said that "[i]n the matter of suspension, demotion, or discharge, if after hearing witnesses, the charges are not sustained . . . the arbitration board may rule that the employee shall or shall not receive full or partial wages from the Company." *Id.* Given this language, the parties and court agreed that "[o]nly if the arbitrator determined that [the employer] did not terminate [the employee] for just cause was he to decide 'what shall the appropriate remedy be?'" *Id.* Accordingly, the arbitrator acted beyond his jurisdiction when he crafted an alternate remedy because he had implicitly found the employer had just cause for dismissal. *Id.* at 903; *see also Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 407 (5th Cir. 2003) (concluding the arbitrator exceed his jurisdiction by crafting an alternate remedy because under the language of the relevant CBA, "[o]nce just cause existed . . . there was no jurisdiction for the Board to permit any outcome other than [the employee]'s termination"). In contrast, the CBA governing Lebsack's dispute, as provided to this Court, contains no restrictions on the arbitrator's authority or ability to review and modify Union Pacific's choice of remedy.

Union Pacific points to the MAPS policy which states that a single incident of violating Rule 1.6, Filing 18-3 at 50, such as Lebsack was found to have done, is sufficient to support an employee's termination. Filing 21 at 25. Union Pacific argues this provision is akin to those found in CBAs in other cases which restrict an arbitrator's ability to craft alternate remedies once just cause for termination is established. Filing 21 at 24-25. But MAPS is not an agreement between SMART and Union Pacific which would constrain the arbitrator's authority; MAPS is an internal discipline policy unilaterally created and implemented by Union Pacific. MAPS itself states, "This Policy does not alter the terms and conditions of the controlling collective bargaining agreement provisions pertaining to employees' right to a formal investigation." Filing 18-3 at 50. Further, in

7

MAPS's FAQ section, in response to the question, "Does this policy constitute a labor agreement?" Union Pacific responds, "No, this is a company policy." Filing 18-5 at 54. Accordingly, under our limited scope of review, the question is not whether Union Pacific's decision to terminate Lebsack was permissible under its internal discipline policy but whether the Board interpreted the CBA when it determined it could craft new punishment to impose upon Lebsack. Finding no language in the CBA which would prevent the Board from doing so, the Court must conclude the arbitrator did not exceed its jurisdiction in this respect.

There is also no merit to Union Pacific's allegation that the Board's Award rewrote the CBA by creating new procedures which Union Pacific must follow as a prerequisite to imposing punishment. Union Pacific claims that the Board's Award requires it to conduct medical and psychological examinations of all employees before imposing punishment for rules violations. Filing 21 at 18-19. It argues such a requirement is unworkable given the short timeline the CBA requires Union Pacific to abide by in conducting an investigation and holding a hearing. Filing 21 at 19-20. However, a reading of the Board's Award shows that it has not rewritten the CBA or imposed any new requirements on Union Pacific. It simply concluded that in the specific instance involving engineer Lebsack, termination was too harsh. The Board does not have authority to require that Union Pacific do anything specific in any future case aside from what is required by the CBA. Union Pacific's argument that the Board exceeded its jurisdiction in this regard is without merit.

### C. Damages

SMART seeks attorney fees and backpay from the time the Board ordered Lebsack reinstated to the date of the Court's judgment. Filing 19 at 10-12. The Court finds neither request should be granted at this time.

The Board's award explicitly excluded Lebsack from receiving backpay from the time he was terminated by Union Pacific until the time of the Board's decision reinstating him. Filing 18-6 at 269 ("Lebsack[] shall be returned to service on a last chance basis, without any back pay . . . ."). However, SMART claims Lebsack should be entitled to backpay and interest from the date of the Board's decision reinstating Lebsack until the date of the Court's decision because Union Pacific willfully disobeyed the Board's order by refusing to return Lebsack to work. Filing 19 at 10-11.

As set forth at length above, this Court lacks the authority to modify awards under the narrow standard of review provided for by the RLA. *See Sullivan*, 856 F.3d at 537. The Board's award did not provide for Lebsack to receive backpay should Union Pacific choose to seek judicial review of the award. *See* Filing 18-6 at 269, 274-77. Accordingly, because backpay during judicial review was not provided by the arbitrator, this Court is without authority to order it. *See MidAmerican Energy Co. v. Int'l Bhd. of Elec. Workers Local 499*, 345 F.3d 616, 623 (8th Cir. 2003) (declining to award backpay during judicial review where award was silent on the question because "arbitrators undoubtedly know that their awards are subject to challenge in the district courts" and thus the failure to specify backpay was a denial of backpay, not an ambiguity which required interpretation).

SMART also seeks attorney fees. Filing 19 at 12. The RLA states, "If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee." 45 U.S.C. § 153(p). However, SMART has not submitted documentation in support of its request as required by local rule. *See* NECivR 54.3; NECivR 54.4. Further, SMART has prevailed only on the issue of the enforceability of the arbitration award, not on the issue of backpay, and thus may be entitled to attorney fees only as to the former. *See Norfolk & W. Ry. Co. v. Bhd. of Ry., Airline & S. S. Clerks, Freight Handlers,*

*Exp. & Station Emp.*, 657 F.2d 596, 604 & n.2 (4th Cir. 1981) (awarding attorney fees to prevailing union in RLA case only as to issue on which it prevailed and denying attorney fees as to punitive damages issue on which it did not prevail). Accordingly, the Court will not award attorney fees at this time but notes that SMART can file a post-judgment motion for attorney fees supported by the proper documentation pursuant to Fed. R. Civ. P. 54(d), NECivR 54.3, and NECivR 54.4. and which distinguishes the attorney fees relating to the issues on which SMART has prevailed from the issues on which it has not prevailed under 45 U.S.C. § 153(p). The parties may further make argument as to whether attorneys' fees are proper in this case.

### III. CONCLUSION

Although this Court has ruled in favor of SMART as to the reinstatement of Mr. Lebsack, this Court is troubled with this case. Upon careful review of the record, this Court is puzzled how the arbitration board in this matter came to the conclusion that Mr. Lebsack's actions of purposely defecating on the knuckle of his train and leaving his feces for others to clean up somehow did not constitute conduct worthy of upholding his termination. As a train engineer, Mr. Lebsack operates large pieces of equipment through public spaces in our country. In his closing statement at the arbitration hearing, Mr. Lebsack's attorney even noted that Mr. Lebstack "transports some of the most hazardous of cargo trains." Filing 18-2 at 353. Upon being given such an important charge that can impact the well-being and safety of the public, Mr. Lebsack should be expected to have better judgment than that which he exhibited.[4]

---

[4] The Court acknowledges the limited situations where the Court can refuse to enforce an arbitration decision under the Railway Labor Act on the basis of public policy. *See, e.g.*, *United Transp. Union*, 3 F.3d at 261 ("[T]here exists a well-defined and dominant public policy against a railroad's employment of individuals whose impaired judgment due to the use of drugs or alcohol could seriously threaten public safety."). However, this Court concludes that relevant authority does not permit it to reject the arbitration award on the basis of public policy in this instance. The Court also notes that the parties did not fully brief and argue this point in their briefs.

In this case, the Court is faced with the fact that "statutory review of arbitration awards under the Railway Labor Act is among the narrowest known to the law." *Union Pac. R.R. Co. v. United Transp. Union*, 3 F.3d 255, 258 (8th Cir. 1993). Indeed, the question for the Court "is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." *McClendon*, 640 F.3d at 804 (quoting *Hill*, 814 F.2d at 1194-95). "Judicial review of a labor-arbitration decision . . . is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Sullivan v. Endeavor Air, Inc.*, 856 F.3d 533, 537 (8th Cir. 2017).

Even though this Court disagrees with the arbitration board's decision on the merits, the Court has concluded that the arbitration board's decision falls within its discretion under the CBA contract provisions cited by the parties, and as provided for by applicable law. Further, the parties have provided no citation to or language from the CBA which the Court concludes would limit the discretion of the board to do what it did in this instance.

For the foregoing reasons, the Court will grant SMART's Motion for Summary Judgment; will deny Union Pacific's Motion for Summary Judgment; and will deny SMART's request for attorney fees and backpay, subject to SMART's ability to file a post-judgment motion for costs and fees.

IT IS ORDERED:

1. The Motion for Summary Judgment filed by International Association of Sheet Metal, Air, Rail, and Transportation Workers - Transportation Division, Filing 19 in 8:19-CV-31 and Filing 26 in 8:19-CV-50, is granted;

2. The Motion for Summary Judgment filed by Union Pacific Railroad Company, Filing 20 in 8:19-CV-31 and Filing 27 in 8:19-CV-50 is denied;

3. Union Pacific Railroad Company is ordered to comply with the terms of the arbitration board's Amended Final Award;

4. International Association of Sheet Metal, Air, Rail, and Transportation Workers - Transportation Division's request for backpay during judicial review is denied;

5. International Association of Sheet Metal, Air, Rail, and Transportation Workers - Transportation Division's request for attorney fees is denied, subject to reassertion in a post-judgment motion which distinguishes the attorney fees relating to the issues on which SMART has prevailed from the issues on which it has not prevailed; and

6. The Court will enter a separate judgment.

Dated this 21st day of November, 2019.

BY THE COURT:

                                  
Brian C. Buescher
United States District Judge